## 52016. CENTRAL OF GEORGIA RAILROAD COMPANY v. SCHNADIG CORPORATION et al.

McMURRAY, Judge.

This case involves two wrongful death actions resulting from a collison of a fire truck with a train. Two men on the fire truck were killed.

The widow of Willoughby and the mother of Vance filed separate suits for damages against the Central of Georgia Railroad Company because of the homicide of their husband and son, respectively. They were killed while they were on a fire truck owned by Morgan County, at a crossing of the railroad in or near Madison, Georgia, where the signals had been disconnected and left disconnected for several days growing out of the work on the sidetrack.

After the suits were served on Central of Georgia,

it caused various third-party defendants to be made including the following: (a) Schnadig Corporation, who was having the sidetrack built; (b) Austin Construction Engineers, the general contractor for the above construction work on the sidetrack for Schnadig; (c) Homer W. Watkins, who sub-contracted with Austin to do the grading work, and whose equipment broke down and caused a cessation of the work for several days, during which time the crossing signals remained disconnected; and (d) The Commissioners of Roads and Revenues of Morgan County, because they were the owners and operators of the fire truck on which the two men were riding when killed, and which commissioners of roads and revenues allegedly held an insurance indemnity contract, for payment of any damages imposed upon them by reason of negligence of the commissioners or their agents arising out of ownership, use, and maintenance of their motor vehicles.

The third-party defendants each filed motions for summary judgment and moved separately to be dismissed, each contending no liability existed against it. The trial judge dismissed each of the third-party defendants. Defendant (third-party plaintiff) appeals. *Held:*

1. The commissioners of roads and revenues, by virtue of having taken out a policy of indemnity insurance, were not liable as they ordinarily might have been, because in such cases their liability is governed by the policy of insurance and laws relative thereto, and not by law as it otherwise exists. See Code Ann. §§ 2-5902, 23-1502, 56-2437. Here the policy of insurance was construed by the trial court as not providing coverage, because the two deceased firemen were "volunteer firemen" and not regular employees.

Ordinarily, all ambiguities in contracts of insurance must be construed most strongly against the insurance company. See *Johnson v. Mutual Life Ins. Co.,* 154 Ga. 653 (1, 2) (115 SE 14); *Howkins v. Atlanta Baggage &c. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158); *Davis v. United Am. Life Ins. Co.,* 215 Ga. 521, 527 (2) (111 SE2d 488). Further, this was a motion to dismiss in the nature of a summary judgment, as evidence was considered (the

policy of insurance). The law is well established that in all motions for summary judgment a jury must resolve all issues of fact, and all inferences, ambiguities, and doubtful evidence must be construed most favorably toward the party opposing the motion. See *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (1) (126 SE2d 442); *Kaplan v. Sanders,* 136 Ga. App. 902, 904 (222 SE2d 630), and cits.

2. In an early part of said insurance contract the language is used "bodily injury. . . *including death* . . . sustained by any person." (Emphasis supplied.) But the part of the policy on which the insurer (Morgan County) relies in its contention that it is not liable is an exclusionary clause as follows: "Fire Apparatus Volunteer Fireman And Volunteer Workers Excluded. It Is Agreed That The Insurance Does Not Apply To Bodily Injury To Any Volunteer Fireman Or Volunteer Worker Of An Insured Named In The Policy, While Engaged In The Operation Of Maintenance Of The Automobile Or Arising Out Of Or In The Course Of His Duties Or Other Activities As A Volunteer Fireman Or Volunteer Worker Participating In Rescue Squad Or Ambulance Corps Operations."

Here the exclusionary language is somewhat vague. These men were not killed while "participating in rescue squad or ambulance corps operations," but while they were on their way to put out a fire. This phrase can be construed as activities of the volunteer workers but it could also apply to volunteer firemen. But "in the course of his duties or other activities" certainly applies to a volunteer fireman. The language "while engaged in the operation of maintenance of the automobile" does not apply as these persons were not engaged in *maintenance.* But looking at the entire exclusionary clause and sentence structure, one is forced to construe it as an exclusion of volunteer firemen from coverage. *Wells v. Metropolitan Life Ins. Co.,* 107 Ga. App. 826, 830 (131 SE2d 634); *Marbut v. Empire Life Ins. Co.,* 143 Ga. 654, 657 (85 SE 834); *Cotton States Mut. Ins. Co. v. Hutto,* 115 Ga. App. 164, 166 (154 SE2d 375). The court did not err in granting summary judgment in favor of Morgan County.

3. Next, we consider the Schnadig Corporation,

which executed the indemnity agreement to indemnify the railroad against all damages resulting from the negligence of Schnadig or its servants or employees in and about the sidetrack. In this connection see Code § 20-504, as amended (Ga. L. 1970, p. 441). Schnadig contracted for the construction of the sidetrack with Austin Construction Engineers, as general contractor. Austin in turn employed or contracted with Watkins to do the grading work. Watkins allowed his equipment, after breaking down, to remain unrepaired for several days due to a strike which prevented his obtaining the necessary repair parts. Our decision as to Schnadig will control the results as to the other third-party defendants.

4. The responsibility for the moving of the signals, the disconnection and reconnection of the signal equipment, was solely with the railroad. See Code §§ 94-502, 94-503; Ch. 95A-10, Art. II (Ga.L. 1973, pp. 947, 1111 et seq.). There was no evidence of any contract or agreement requiring the action of Schnadig or its contractor, agents or employees to do anything in regard to the signals. Both the railroad track supervisor and the signals supervisor testified that they expected the signals to be disconnected for approximately a week and to be reconnected by the time the grading was completed. The track supervisor knew that work had not commenced by the following week, that Watkins' grading equipment had broken down and that the track had been disconnected for a week, and was still out 10 days and 20 days later. The signal supervisor testified the crossing signals equipment was moved within three days and only awaited the completion of the grading work in order to be connected on a permanent basis. Following the collision the signal equipment was temporarily connected, and this could have been done earlier for the railroad was well aware of the fact that the grading was not performed within one week as expected.

5. While there may have been an omission on the part of the employees, agents and servants of Schnadig in failing to advise the railroad of the delay, nevertheless the railroad was aware of the delay. Possibly Schnadig should have insisted that its general contractor do all in Austin's power to get the work performed, but none of

this caused the railroad to leave the signal equipment disconnected. Compare *Richardson v. Pollard,* 57 Ga. App. 777 (196 SE 199); *Laite v. Baxter,* 126 Ga. App. 743, 748 (191 SE2d 531). No affirmative duty on the part of these third-party defendants to act was shown so as to give rise to any contribution to the railroad for its alleged negligence where it had the sole responsibility to the public. See *Atlanta Gas Light Co. v. Jennings,* 86 Ga. App. 868 (72 SE2d 735); *Cook v. Parrish,* 105 Ga. App. 95, 99 (123 SE2d 409).

6. Under these circumstances the railroad cannot obtain contribution from others for it alone was responsible, since at all times it was in complete control of this portion of the work, knew of the delay, and would not have had to wait on anyone to reconnect the signal equipment. The court did not err in granting summary judgment to the other third-party defendants.

*Judgment affirmed. Pannell, P. J., and Marshall, J., concur.*

Argued April 7, 1976 — Decided June 17, 1976 — Rehearing denied July 2, 1976 — ▉▉▉▉▉▉▉▉

*Harris, Watkins, Taylor & Davis, Joseph H. Davis, Denmark Groover, Jr.,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Ben L. Weinberg, Jr., Erwin, Epting, Gibson & McLeod, Henry G. Garrard, III, Gary B. Blasingame, John H. Stanford, Jr., John F. Davis, Jr., William A. Prior, Jr., Lawrence, Rice & Lawrence, George D. Lawrence, Lambert & Carter, E. R. Lambert,* for appellees.