M. D. SMITH d/b/a M. D. Smith Construction Company, Plaintiff-Appellant,

v.

SEABOARD COAST LINE RAILROAD COMPANY, Defendant-Appellee.

No. 80–7074.

United States Court of Appeals, Fifth Circuit. Unit B

March 16, 1981.

---

Montet & Smith, Malcolm P. Smith, Atlanta, Ga., for plaintiff-appellant.

Eugene A. Epting, Athens, Ga., for defendant-appellee.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges and LYNNE *, District Judge.

PER CURIAM:

The judgment appealed from is AFFIRMED on the basis of the Order of District Judge William C. O'Kelley, filed on December 17, 1979, and attached hereto as an Appendix.

AFFIRMED.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| M. D. SMITH d/b/a M. D. SMITH CONSTRUCTION COMPANY | : | |
| vs. | : | CIVIL NO. C79–11G |
| SEABOARD COAST LINE RAILROAD COMPANY | : | |

ORDER

O'KELLEY, District Judge.

The plaintiff M. D. Smith commenced this action in the Superior Court for Barrow County, Georgia, alleging that a shop building and some equipment were destroyed by a fire started through the negligence of the defendant Seaboard Coast Line Railroad Co. The defendant answered and counterclaimed for the costs of defending this suit

---

* District Judge of the Northern District of Alabama, sitting by designation.

pursuant to the indemnity provision of their lease agreement. The defendant, a Virginia corporation, then had the suit removed to this court. Presently pending before the court is the defendant's motion for summary judgment.

The following facts are undisputed. On March 24, 1978, a fire began on the defendant's right-of-way at a point adjacent to the plaintiff's property. The fire spread to a small shed containing combustible petroleum products used by the plaintiff in his business. The property on which the shed was located belonged to the defendant and had been leased by the plaintiff for $100.00 per year since early 1969.[1] From the shed the fire then spread to and destroyed an adjoining metal shop building located entirely on the plaintiff's property. The plaintiff now seeks $36,394.75 for the loss of the metal shop building.

The defendant's argument in support of its motion is simple and straightforward: the plaintiff agreed in paragraphs six and eight of the lease agreement, respectively, to

> indemnify and save harmless Lessor, its successors and assigns, against any and all claims, demands, suits, judgements [sic] and sums of money . . . for the loss of or damage to said structures, their contents, fence or any property placed upon or stored in said premises, as the result of fire, regardless of Lessor's negligence . . .;

and to

> indemnify and save harmless Lessor, its successors and assigns, from and against all loss, costs, expense, claims, suits and judgments, including attorneys' fees, whatsoever in connection with . . . loss of or damage to property caused by or in

any way connected with Lessee's use of the leased premises, whether such injury, death, loss, or damage results from any cause whatsoever; and whether such injury, death, loss or damage results from the negligence of Lessor, its agents or otherwise.

On the basis of the foregoing provisions the defendant contends that even assuming that the fire started as a result of its negligence, the plaintiff has contracted away his right to sue the defendant for the damage and that, therefore, there is no issue of fact. The only chore remaining for the court, the defendant concludes, is to decide the purely legal question whether these indemnity provisions can be construed to screen the defendant from any liability for this accident.

The plaintiff's counter-arguments, on the other hand, are multifold. He asserts that one of the indemnity provisions is contrary to the public policy expressed in Ga.Code Ann. § 20–504 and, therefore, is unenforceable; that the provisions cannot be construed to shield the defendant from liability for an accident caused solely by its own negligence, since they do not express the intent of the parties in clear and unequivocal terms; that even if the indemnity provisions are valid and enforceable, they absolve the defendant of liability only for damage to any of the plaintiff's property located on the defendant's right-of-way; and that even if the provisions are valid and enforceable, and apply to any damage whatsoever suffered by the plaintiff, the defendant is estopped from relying on them since its representative assured the plaintiff prior to the execution of the lease agreement that the shed was not on the defendant's right-of-way.

---

1. The lease agreement raises several interesting issues, which the parties do not address. First, the plaintiff never mentions in his affidavit that the lease agreement was executed, and in his response to the defendant's statement of material facts the plaintiff states that he "is unable to admit the lease agreement dated April 24, 1969, since he had no knowledge of the said lease agreement until after the subject fire." Notwithstanding this unequivocal denial of any knowledge of the agreement, the plaintiff never

argues that he did not sign the lease and has not been paying $100.00 a year in rent pursuant to the lease terms. If this is not sufficiently contradictory, then the plaintiff adds in his affidavit that he was assured by a Mr. Hill, who purportedly represented the defendant, that the plaintiff's shed was not encroaching on the defendant's right-of-way. The plaintiff then claims that he relied on these representations. But even after this assurance, the plaintiff signed the lease.

Aside from this final argument by the plaintiff, the parties disagree only as to the legal meaning of their agreement. In resolving this narrow issue the court's role is well-defined. If the language of the agreement is clear, then it is controlling, and the court need look no further. *Carsello v. Touchton*, 231 Ga. 878, 204 S.E.2d 589 (1974). This principle is the obverse of the broad freedom of contract the law grants the parties; once a contract is signed, its provisions define the full measure of rights accorded each party. *Worth v. Orkin Exterminating Co.*, 142 Ga.App. 59, 60, 234 S.E.2d 802 (1977). Whether the language of an agreement is clear or ambiguous, then, is a question of law for the court. *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir. 1967); *Honea v. Gilbert*, 236 Ga. 218, 219, 223 S.E.2d 115 (1976); *Early v. Kent*, 215 Ga. 49, 49–50, 108 S.E.2d 708 (1959); Ga.Code Ann. § 20–701. Only if ambiguity remains after the court applies the pertinent rules of construction does this become a question of fact. *General Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311, 313 (5th Cir. 1978) (per curiam); *R. S. Helms, Inc. v. GST Development Co.*, 135 Ga.App. 845, 848, 219 S.E.2d 458 (1975). *See generally* 3 *Corbin on Contracts*, § 554, at 219–25.

Whether this disagreement can be resolved on a motion for summary judgment, then, depends upon the clarity of the language used by the parties to express their intentions. As a general rule a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, provided the parties' intention to this effect is expressed in clear and unequivocal terms, and except when such an agreement is prohibited by statute or where a public duty is owed. *Batson-Cook Co. v. Georgia Marble Setting Co.*, 112 Ga.App. 226, 229–30, 144 S.E.2d 547 (1965). Applying this standard, Georgia courts have held in a number of cases that an exculpatory clause shielded a defendant from liability for the plaintiff's injury, even when his negligence caused or contributed to the accident. *E. g., Southern Railway Co. v. Insurance Company of North America*, 228 Ga. 23, 183 S.E.2d 912 (1971); *Blitch v. Central of Georgia Railway Co.*, 122 Ga. 711, 50 S.E. 945 (1905); *Binswanger Glass Co. v. Beers Construction Co.*, 141 Ga.App. 715, 234 S.E.2d 363 (1977); *Georgia Ports Authority v. Central of Georgia Railway Co.*, 135 Ga.App. 859, 219 S.E.2d 467 (1975); *Benson Paint Co. v. Williams Construction Co.*, 128 Ga.App. 47, 195 S.E.2d 671 (1973); *Hearn v. Central of Georgia Railway Co.*, 22 Ga.App. 1, 95 S.E. 368 (1918). In each of these cases the courts determined that as a matter of law the indemnity provision in question was drafted in clear enough terms to protect the indemnitee even though he had been negligent. While no talismanic phrase is necessary, whether this indemnity clause accomplishes what the defendant insists it does, then, depends entirely upon the language used. *See Brown v. Seaboard Coast Line Railroad Co.*, 554 F.2d 1299 (5th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

The plaintiff first contends that the exculpatory clauses set forth in paragraphs six and eight of the lease agreement protect the defendant only from liability for the damage to any of the plaintiff's property resting on the defendant's right-of-way. By this interpretation the provisions would cover damage to the small shed only, which loss the plaintiff concedes he must absorb. In support of this argument the plaintiff cites *Manchester Marble Co. v. Rutland Railroad Co.*, 100 Vt. 232, 136 A. 394 (1927), in which the Vermont Supreme Court refused to construe an indemnity clause to protect the defendant from liability for any damage to the plaintiff's property that was not located on the defendant's right-of-way, even though the structures on and off the right-of-way constituted a single unit for the purposes of the plaintiff's business.

A similar argument made by the plaintiff, which can be discussed simultaneously with his first, is that the indemnity provisions could not bar the plaintiff's claim if the trier of fact was to determine that the defendant was alone responsible for this accident because the provisions do not state

this intent in clear and unequivocal terms. The plaintiff insists that the paragraph six exculpatory clause pertains only to the shed on the defendant's right-of-way, while the reference in the paragraph eight exculpatory clause to the "lessee's use of the leased premises" declares as a necessary precondition to its operation that the plaintiff be contributorily negligent. Upon this foundation he contends that it is impossible to determine as a matter of law that he was in any way responsible for his loss; therefore, a question of fact remains for the jury's consideration.

The court agrees that this case presents a classic causation-in-fact problem, one which it would not endeavor to decide summarily, but the court need not wrestle with this quandary for the issues raised by the defendant's motion and the plaintiff's counter-arguments can be settled without a long-winded discussion of the bizarre circumstances of this accident.

 The plaintiff erected a small shed and a chain-link fence as an extension of his business operation on what the plaintiff reasonably believed to be his own property. But as is apparent from the copy of the lease attached to the defendant's motion for summary judgment, when it was discovered that the property was actually part of the defendant's right-of-way, the parties entered into this agreement to grant the plaintiff the right to keep his shed and chain-link fence on the defendant's property. In return for this concession the plaintiff agreed to pay $100.00 per year in rent and to maintain the shed and fence in good condition. Mindful of the danger inherent in keeping this shed so close to the tracks, the defendant had the plaintiff also agree

to indemnify the defendant against "all claims." The plaintiff agreed in paragraph six "to indemnify and save harmless . . . [the defendant] against any and all claims . . . for the loss of or damage to . . . [the shed or its contents], as the result of fire, regardless of . . . [the defendant's] negligence." This provision clearly shields the defendant from any liability for damage to the plaintiff's shed on the right-of-way, even though arguably the defendant was the only negligent party. In paragraph eight the plaintiff further agreed not to sue the defendant for any "loss of or damage to property caused by or in any way connected with . . . [the plaintiff's] use of the leased premises . . . whether such . . . loss or damage results from the negligence of . . . [the defendant], its agents or otherwise." The plaintiff argues that this provision does not clearly and unequivocally encompass the damage to his metal shop building, which was not located on the defendant's right-of-way.[2] The interpretation proposed by the plaintiff, however, would render this entire paragraph redundant. The parties entered into this agreement with the intention that the plaintiff could continue using the small shed in the conduct of his business, even though he had mistakenly built the structure on the defendant's property. To protect itself in the foreseeable event that the plaintiff's property was damaged through its own negligence, the defendant inserted these two indemnity clauses. Paragraph six protects it from liability for damage to any of the plaintiff's property on the defendant's right-of-way. Within its self-defined limits, then, paragraph eight, if it is not to be construed out of existence, must cover any damage suffered by the plaintiff in addition to or apart from the loss of the shed.[3] *See Seaboard Coast Line Railroad*

2. The plaintiff cites *Bohannon v. Southern Railway Co.*, 97 Ga.App. 849, 104 S.E.2d 603 (1958), in support of this proposition, but this decision can be distinguished easily. In *Bohannon*, the court interpreted the indemnity clause so as to protect the indemnitee only if the indemnitor was solely negligent or the parties were concurrently negligent. Because it was shown that the indemnitee was negligent, its only recourse was to argue that the indemnitor was negligent also; otherwise, the indemnity

clause would not come to its rescue. But the court held that it was not negligence for the indemnitor to place his building near the track when that was the obvious purpose of the contract.

3. The court need not determine the full scope of this clause since for the purposes of this suit it is only necessary to conclude that the buildings directly adjacent to the small shed and the

*Co. v. Dockerty,* 135 Ga.App. 540, 218 S.E.2d 263, (1975); *Blitch v. Central of Georgia Railway Co.,* 122 Ga. 711, 714, 50 S.E. 945 (1905). The clause states explicitly that the defendant is to be protected from liability for the damages to any of the plaintiff's property "caused by or in any way connected with" the plaintiff's use of the leased premises. It is undisputed that the shed located on the defendant's right-of-way was used in connection with his metal shop building, for the loss of which the plaintiff is requesting monetary relief, and that the fire, which arguably was ignited by the defendant's negligence, spread to the metal shop building after first engulfing the small shed. Even when construed strictly against the defendant, it is clear that this exculpatory clause was intended to cover this kind of accident.

On numerous occasions in the past the courts have been asked to, in effect, reform an agreement that one party realizes too late is not in his best interests or that does not say what he thought it said. Here the plaintiff must shoulder the loss of his business when the only benefit he received from the agreement was the use of a small parcel of the defendant's right-of-way, for which he had to pay only a nominal sum. But it is not the court's province to pass on the wisdom of a particular agreement, even though its terms may have been accepted by one party as the result of oversight or poor cerebration. Absent special circumstances, the court cannot correct for the mistake or ignorance of one party when he had the responsibility, and opportunity, to protect himself. *See Hannah v. Belger,* 436 F.2d 96, 98–99 (5th Cir. 1971); *Cristal v. Harmon,* 137 Ga.App. 153, 155–56, 223 S.E.2d 210 (1976); *Ansley v. Forest Services, Inc.,* 135 Ga.App. 745, 747–48, 218 S.E.2d 914 (1975).

Nor do the plaintiff's final two arguments alter this result. He contends that

these indemnity provisions are contrary to the public policy set forth in Ga.Code Ann. § 20–504: [4]

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure . . . purporting to indemnify or hold harmless the promisee against liability for . . . damage to property caused by or resulting from the sole negligence of the promisee . . . or indemnitee, is against public policy and is void and unenforceable . . .

In support of this argument the plaintiff refers to paragraph four of the lease agreement wherein the plaintiff agreed to

> construct and maintain said structures, all roofing to be fireproof, fence [sic] in a good, substantial and workmanlike manner, in accordance with plans and specifications which must first be submitted to and approved by Lessor in writing before the construction thereof is begun, said structures to be painted and all said premises to be kept in good condition, and in all respects satisfactory to Lessor, during the continuance of this lease.

The plaintiff contends that the lease agreement "is then in part at least an agreement relative to the maintenance of a building structure [sic] . . ." and that, therefore, the exculpatory provisions offend this statute.

The court is unable to find a single case that would lend support to the plaintiff's interpretation of this statute. The one cited by the plaintiff in his brief, *Lie-Nielsen v. Tuxedo Plumbing & Heating Co.,* 149 Ga.App. 502, 254 S.E.2d 729 (1979), concerned an indemnity clause in an agreement to install water lines inside an apartment complex owned and operated by the purported indemnitor, which is clearly the evil addressed by the statute. *See also Central of Georgia Railroad Co. v. Schnadig Corp.,*

---

defendant's right-of-way are covered by the terms of this provision.

**4.** Neither party discussed the potential retroactive application of this 1970 statute to a 1969 contract. *See Southern Railway Co. v. Insur-*

*ance Company of North America,* 228 Ga. 23, 28, 183 S.E.2d 912 (1971); *Southern Railway Co. v. A. O. Smith Corp.,* 134 Ga.App. 219, 213 S.E.2d 903 (1975); Ga.Code Ann. § 102–104.

139 Ga.App. 193, 228 S.E.2d 165 (1976). Without the assistance of any legislative history or case law, the court finds itself in a difficult, but not irresoluble, predicament: to surmise what the legislature "would have intended on a point not present to its mind, if the point had been present." B. Cardozo, *The Nature of the Judicial Process* 15 (1949).

The statute creates two threshold conditions: that the exculpatory clause purports to protect the indemnitee against the consequences of his sole negligence and that the agreement pertain to the maintenance or construction of a building. This first prerequisite is satisfied in the present case, but the court concludes that the statute does not apply to this lease agreement. The apparent purpose of this statute is to prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied. Here the building activity cited by the plaintiff pertains to a structure already erected on the defendant's property, which the plaintiff uses in his business operation and has agreed to maintain in return for the right to keep this structure on the defendant's property. The dangers contemplated by the legislature, then, are not present here. Furthermore, as a general rule, a party can protect himself by contract from liability for the consequences of his own negligent acts. As to contracts relating to the construction or maintenance of buildings, however, this statute changes this common law rule and, thus, should be strictly construed. *See generally Cash v. Street & Trail, Inc.*, 136 Ga. App. 462, 221 S.E.2d 640 (1975). For these reasons, the scope of the statute should not be extended beyond its intended limits to so tenuous a connection with any building activity.

But even assuming that paragraph four of the lease does fall within the terms of this prohibition and, therefore, the statute does prevent the defendant from disclaiming liability for the damage to the shed, this does not mean that a similar calamity befalls paragraph eight. In *Camp Concrete Products v. Central of Georgia Railway Co.*, 134 Ga.App. 537, 539, 215 S.E.2d 299 (1975), the court of appeals acknowledge that while this statute may void one clause of a contract, this result does not taint the remaining separable obligations imposed by the agreement. Therefore, if an indemnity clause is broader in its application than this statutory prohibition, the unlawful portion may be excised, and the remainder, if otherwise valid, is still controlling. The indemnity clause that compels the result here does not relate directly to whatever building activity might be required by the agreement.

The plaintiff's final argument—that the defendant is estopped by his conduct prior to the execution of the lease from relying on the indemnity provision—is without merit. The plaintiff alleges, and the defendant does not deny, that a representative of the defendant assured the plaintiff prior to the execution of the lease agreement that the property on which the small shed was to be located belonged to the plaintiff. By entering into the lease agreement and agreeing to pay rent for the use of this part of the defendant's right-of-way, the plaintiff is now estopped from complaining about a mistake made prior to the execution of the lease. By signing the lease the plaintiff admitted, at least implicitly, that he had been mistaken about the boundary line and in recognition of this error would pay the defendant rent for any further use of this parcel of land. The time to complain about any misrepresentations by the defendant was much earlier when the defendant first informed the plaintiff that he was encroaching on the defendant's right-of-way and suggested that the two parties enter a lease agreement.

Accordingly, for all the foregoing reasons, the court hereby grants the defendant's motion for summary judgment. The clerk is directed to enter judgment in favor of the defendant railroad.

IT IS SO ORDERED this 17th day of December, 1979.