IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2019 Session

## JOHNNY NESMITH v. SAMUEL C. CLEMMONS, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 43480          Michael W. Binkley, Judge**

_____

**No. M2017-02521-COA-R3-CV**

_____

Defendants appeal the judgment entered in favor of Plaintiff in this breach of contract action arising out of a failure to pay a promissory note. Defendants argue that the trial court erred in several pretrial rulings, in concluding that the contract was ambiguous and considering parol evidence, in holding that the attorney that drafted the agreement represented Defendants and construing the ambiguous term against them, and in denying their motion to supplement the appellate record. Upon our review, we discern no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Robert Dalton and L. Jeffrey Payne, Lewisburg, Tennessee, for the appellants, Samuel C. Clemmons and Shannon N. Clemmons.

Virginia L. Story and Kathryn L. Yarbrough, Franklin, Tennessee, for the appellee, Johnny Nesmith.

## OPINION

### I.  FACTUAL AND PROCEDURAL HISTORY

This appeal stems from a breach of contract action to recover on a promissory note executed between family members who were also business partners. Dr. Samuel Clemmons and his wife, Shannon, founded Elite Emergency Services ("Elite")[1], an

_____

[1] The record shows that Elite was formed as a corporation, not a partnership or limited liability company. Taken in context, the reference in various documents to the parties' "membership interest" in Elite

emergency room physician staffing business. Mrs. Clemmons' parents, Johnny and Brenda Nesmith, bought into the company, with each person owning 25 percent of the company. In July 2010, after a disagreement between Dr. Clemmons and Mr. Nesmith, Dr. and Mrs. Clemmons gave notice of their offer to sell their membership interest in Elite via a document styled "Notice of Exercise of Business Agreement's Put/Call Provision." Pursuant to that notice, Mr. Nesmith was also permitted the option of requiring Dr. and Mrs. Clemmons to purchase his membership interest, which he elected to exercise. A Membership Transfer Agreement ("MTA") was entered into by Dr. Clemmons, Mrs. Clemmons, and Mr. Nesmith on August 27, 2010, and the Clemmons executed a promissory note to Mr. Nesmith in the amount of $600,000, payable in monthly installments of $10,000 beginning September 1, 2010; they stopped making payments in October 2013.

On August 27, 2014, Mr. Nesmith ("Plaintiff") filed suit in the Chancery Court for Williamson County, alleging that Dr. and Mrs. Clemmons ("Defendants") failed to make payments according to the schedule in the Note and were therefore in default; he sought $118,000 for the arrearages and late fees, plus interest and attorneys' fees.

Defendants moved to dismiss the action or, in the alternative, transfer it to the circuit court for Williamson County, where they had previously initiated a suit against Mr. Nesmith and six others who worked for, advised, or provided services to Elite; the motion was denied. Defendants then answered the complaint, asserting a counterclaim for breach of contract and pleading the affirmative defenses of estoppel, laches, unclean hands, and waiver; in an amended answer, Defendants asserted that the promissory note was not valid due to a material mistake of fact and sought a judgment in their favor as to the damages caused by the breach of contract. Plaintiff answered the countercomplaint, asserting the defense of failure to state a claim and the doctrines of unclean hands, unjust enrichment, and consent and acquiescence.

A bench trial was held on April 25, 26 and May 12 and 20, 2016, and on April 5, 2017.[2] The following witnesses testified: Mr. Nesmith; Russell Morrow, who prepared

---

appears to be solely to their percentages of ownership of the corporation, and not to any administrative or executive responsibilities attendant to their ownership.

[2] The interlude between the fourth and fifth days of trial was due to the resolution of a recusal motion by the appellate courts. Defendants filed a "Motion for Disqualification" in the trial court on April 15, 2016, and on April 20, the court notified the parties that it was denying the motion; an order denying the motion was entered on May 11. Defendants filed another recusal motion in August 2016; that motion was also denied. Defendants appealed the denial of that motion pursuant to Supreme Court Rule 10B, and this Court affirmed the denial of the motion on procedural grounds. *Clemmons v. Nesmith*, No. M2016-01971-COA-T10B-CV, 2016 WL 6583790 (Tenn. Ct. App. Nov. 4, 2016) ("*Clemmons I*"). On appeal to the Supreme Court, the case was remanded to this Court to consider the merits of the issues raised in the appeal; we concluded that the trial court did not err in denying the recusal motions. *Clemmons v.*

Elite's corporate tax returns from 2000 until 2009; Dr. Clemmons; Randy Stockton, who worked for Frost-Arnett Company, a collections agency used by Elite; Michael Bowen, who works in the Medical Specialty Group of SunTrust Bank, where Elite's bank account was held; Brenda Nesmith; Dan Huffstutter; Kelly Pendergrass; and Wanda Jones.

By order entered August 17, 2017, the trial court held that Defendants had breached the promissory note and proceeded to consider whether Plaintiff had first breached the MTA by bringing "harm" to Defendants or Elite. The court held that the term "harm" as used in the MTA was ambiguous, calling for the court to consider parol evidence to consider the parties' intent. The court concluded that Defendants failed to show by a preponderance of the evidence that Plaintiff breached the MTA or the promissory note, failed to establish the affirmative defenses they raised, and failed to prove the elements of their counterclaim for breach of contract and material mistake of fact. The court awarded judgment in the amount of $240,000 and held that Plaintiff was entitled to reasonable attorney's fees and costs, to be determined in a subsequent order; the court also awarded prejudgment interest to Plaintiff at the rate of ten percent per annum from the date of the filing of the complaint until entry of the order as well as post judgment interest. By order entered November 27, the court entered judgment in the amount of $202,780.47 for Plaintiff's attorneys' fees and costs.

Defendants filed their notice of appeal on December 22, 2017. They moved in this court to supplement the record with additional documents which they asserted were not included in the technical record and were "essential for a fair and accurate consideration of all of the issues on appeal." By order entered May 31, 2018, this Court remanded the matter to the trial court for consideration, which denied the motion to supplement. On July 31, Defendants filed another motion to supplement the record in this court, arguing that "the trial court has refused to grant Defendants any relief whatsoever, even when it is facially apparent that the current Technical Record is entirely insufficient and not in conformity with the truth." This Court denied the motion without prejudice to the trial court taking further action relative to the record. The Tennessee Supreme Court denied Defendants' Rule 10 application for extraordinary appeal.

Defendants raise six issues for our review. Two concern the court's rulings on a discovery motion and a motion to continue the trial; three concern holdings relative to the MTA; lastly, Defendants appeal the denial of their motion to supplement the record. Plaintiff seeks his attorney's fees incurred in this appeal.

---

*Nesmith*, No. M2016-01971-COA-T10B-CV, 2017 WL 480705 (Tenn. Ct. App. Feb. 6, 2017) ("*Clemmons II*").

3

## II. ANALYSIS

## A. THE RECORD ON APPEAL

We first consider Defendants' contention that the trial court erred in denying their Motion to Correct and Supplement the Record. After Defendants filed their notice of appeal on December 22, 2017, they filed a Designation of the Record on January 8, 2018, identifying 33 items. When the trial court clerk certified the record on appeal, she included an affidavit in which she stated that four of the items identified in the Designation were already included in the record, one could not be found "nor was it identified with particularity," and that "[a]ll remaining requests were for documents that were not filed in the trial court . . . during the pendency of the proceedings." Defendants filed a motion with this Court to correct and supplement the record, and we remanded the case for the trial court's consideration; the trial court held a hearing and denied the motion by order entered July 6, 2018. Defendants moved this court for relief from the trial court's decision, and we denied the motion, "find[ing] no extraordinary circumstances which would warrant this court disregarding the trial court's decision." Defendants filed an application for an extraordinary appeal from our decision in the Tennessee Supreme Court, pursuant to Rule 10 of the Rules of Appellate Procedure; the Supreme Court denied the application. Defendants have included this issue in their appeal as of right.

Defendants assert in their brief on appeal that the court's decision was error for three reasons, which we quote below:

> [1] First, regarding the Designation, the vast majority of the documents enumerated in the Designation are not included in the Technical Record . . . [2] Second, regarding motions and orders relating to discovery, Appellants concede that such materials were not included in the Designation. . . . As trial counsel pointed out in Paragraph 4 of the Declaration, the lack of meaningful discovery and unreasonable restrictions placed thereon by the trial court are critical issues in the appeal of the trial court's final ruling. . . . Based on this reasoning, Appellants argued in their Motion that the Technical Record should be supplemented to include each and every motion and order relating to discovery. . . . [3] Finally, … the Appendix to the Brief of Appellant is replete with documents that otherwise should have been included in the Technical Record pursuant to Tenn. R. App. P. 24(a) but, inexplicably, were not. . . . In sum, Appellants have been denied procedural due process by the deficiencies in the record and the trial court's refusal to correct them. As evidenced by the lengthy Appendix to this brief and the numerous citations thereto contained herein, the documents that have been excluded from the record are essential to Appellants' arguments on appeal.

This issue addresses the application of Rule 24 of the Tennessee Rules of Appellate Procedure. We accord great deference to decisions of this nature made by the trial court:

> The procedure for correction or modification of the record reflects the policy of avoiding technicality and expediting a just resolution on the merits by according deference to the trial court's decision on which matters are properly includable in the record, thereby avoiding additional litigation on that subject alone. The specific purpose of Rule 24 is accommodated as well, since the trial judge is in the best position to determine which matters are necessary to "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See also Artrip v. Crilley,* 688 S.W.2d 451, 453 (Tenn. [Ct.] App. 1985).

*Bradshaw v. Daniel*, 854 S.W.2d 865, 868–69 (Tenn. 1993). Rule 24 provides in pertinent part:

> (a) . . . **The following papers filed in the trial court are excluded from the record:** (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; **(2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto;** (3) any list from which jurors are selected; (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once. . . . **If the appellee deems any other parts of the record to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. All parts of the record described or designated by the parties shall be included by the clerk of the trial court as the record on appeal.** The declaration and description of the parts of the record to be included on appeal provided in this subdivision may be filed and served with the declaration and description of the parts of the transcript to be included in the record provided in subdivision (b) of this rule. If a party wishes to include any papers specifically excluded in this subdivision, but fails to timely designate such items, the trial court clerk may supplement the record as provided for in subdivision (e) without modifying the previously prepared record.

> \*\*\*

5

(e) Correction or Modification of the Record. If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. **Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive.** If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

\*\*\*

(g) Limit on Authority to Add or Subtract From the Record. Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

Tenn. R. App. P. 24 (emphasis added).

In the order entered on July 6, 2018, the trial court held in pertinent part:

Based upon the total lack of information presented by counsel for the Clemmons as to the issues for appeal, if any, this Court is not in a position to have any basis from which a decision can be made as to whether or not the requested documents to supplement the record are needed to convey a fair, accurate, and complete account of what transpired with respect to the issues, if any which may or may not be presented to the Court of Appeals in this case.

With respect to the Defendants' first argument, Rule 24 makes clear that items not filed with the court are not properly includable in the record on appeal. Nowhere in their brief do they address the clerk's affidavit attesting that the items Defendants identified "were already included in the record" and that "[a]ll remaining requests were for documents that were not filed in the trial court . . . during the pendency of the proceedings." Defendants have not identified which documents identified in the Designation were introduced in the trial court but excluded from the appellate record, as they are required to do by Rule 24. Accordingly, the Defendants have not demonstrated that extraordinary circumstances exist to assign error to the trial court's decision in this regard.

6

With respect to their second argument, Defendants concede that the Designation does not identify the motions and orders that they contend are pertinent to the first and second issues they raise in this appeal relating to the court's pre-trial rulings denying their motion to continue and imposing a discovery sanction against them, which will be discussed in Section B, *infra*. Relative to the trial court's holding that Defendants did not provide sufficient information as to what issues would be raised on appeal, in their brief on appeal Defendants cite Paragraph 4 of the their counsel's Declaration and argue that "the lack of meaningful discovery and unreasonable restrictions placed thereon by the trial court are critical issues in the appeal of the trial court's final ruling," and, consequently, the record should have been supplemented "to include each and every motion and order relating to discovery."

In paragraph 4 of the Declaration, Defendants' counsel stated:

Each of the documents included in the Designation of Record relates to issues on Appeal, including issues related to the following: (I) failure to consolidate cases with compulsory counterclaims; *(II) failure to allow discovery and improper discovery rulings;* (III) improper and unfair rulings; (IV) failure to disqualify based on the appearance of impropriety; (V) any other issues that will be part of Appellants' appeal.

(Emphasis added.) Issue II in the above list, which directly relates to this argument, does not state which of the multitude of discovery rulings made by the trial court over the course of this litigation that Defendants wished to address, nor does it explain how those rulings constituted a "lack of meaningful discovery" or "unreasonable restrictions." Rule 24(a) imposes an obligation on the parties to designate the paper or matter filed in the trial court that the party wishes to include in the record. In addition, when given the opportunity do so, the trial court held that Defendants failed to articulate the specific rulings that they were appealing or the issues relating to the orders they sought to have included in the record. Given the protracted nature of this lawsuit and the multitude of rulings made pre-trial, the trial court was not obligated, consistent with the language of Rule 24(e), to correct or modify the record when Defendants failed to satisfy their obligation to clearly identify the materials they wanted included or the issues they planned to present on appeal. The trial court did not err in this regard.

In similar fashion, we conclude that Defendants' third argument that "the documents that have been excluded from the record are essential to Appellants' arguments on appeal" is without merit. Items I and IV of the Defendants' statement of issues in their counsel's Declaration are not raised as issues in this appeal, and Items II, III, and V are vague and do not state the motions or orders that are pertinent or state in short and plain terms the particular issue(s) that will be presented, as required by Rule 24(a).

The trial judge is in the best position to determine which matters are necessary for inclusion in the record "to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *Bradshaw*, 854 S.W.2d at 868. We are to accord deference to the trial court's decision on which matters are properly includable in the record. *Id.* The purpose of Rule 24 and the procedure for correction or modification of the record is to avoid technicality and to expedite a just resolution on the merits, thereby avoiding additional litigation. *Id.* Defendants have not demonstrated that extraordinary circumstances exist that would cause us not to defer to the judgment of the trial court.

## B. PRETRIAL RULINGS

Trial of the case was set for April 25, 2016. Two of the issues raised by Defendants stem from an order entered following a hearing on April 12, wherein the court denied Defendants' Emergency Motion to Continue the Trial, allowed Defendants to send a "specific set of discovery" to three witnesses by 9 a.m. on April 13, to be responded to within seven days, and set a third day for the trial, if necessary, for May 20.[3]

These issues concern the court's decisions on discovery matters and a motion to continue, both of which are reviewed under the abuse of discretion standard. *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (motions to continue reviewed under an abuse of discretion standard); *State Dep't. of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008) (motions to continue reviewed under an abuse of discretion standard); *Culbertson v. Culbertson*, 393 S.W.3d 678, 682–83 (Tenn. Ct. App. 2012) (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010), holding that "[b]ecause decisions regarding pretrial discovery are inherently discretionary, they are reviewed using the 'abuse of discretion' standard of review."). This standard was set forth in *Lee Medical, Inc.*:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

> Discretionary decisions must take the applicable law and relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision.

---

[3] Ultimately, trial was also held on May 12 and 20, 2016, and April 5, 2017.

A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

312 S.W.3d at 524-25 (internal citations omitted).

Our analysis regarding the motion to continue is also guided by the holding in *Howell v. Ryerkerk*:

Decisions regarding continuances are fact-specific and motions for a continuance should be viewed in the context of all the circumstances existing when the motion is filed. This Court has held that the party seeking a continuance carries the burden to prove the circumstances that justify the continuance. In order to meet this burden, the moving party must supply some strong excuse for postponing the trial date. Factors relevant to the trial court's decision include: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.

372 S.W.3d 576, 580-81 (Tenn. Ct. App. 2012) (internal citations and quotations omitted).

Defendants contend that they did not have ample time to conduct discovery of Wanda Jones, Tiffany Jones, and Kelly Pendergrass, who worked in the billing department at Elite, when a stay on discovery in this case had only been lifted on April 5, 2016. Defendants have not identified an order imposing the stay which they assert prevented them from conducting discovery of non-parties to this litigation and which was lifted on April 5.

The April 5 order in the record states:

On November 25, 2014, this Court severed and stayed Plaintiffs Wanda Jones, Tiffany Jones, and Kelly Pendergrass' action[4] pending resolution of the related federal case. On September 30, 2015, Plaintiffs filed a Motion to Lift the Stay in the Circuit Court action. This and other matters came before the Court on January 14, 2016.

In light of the Federal Court's ruling declining to enjoin further litigation in this Court, the Court now lifts the stay.

---

[4] The suit in which Wanda Jones, Tiffany Jones, and Kelly Pendergrass were plaintiffs was an action brought in federal court under the Fair Labor Standards Act.

9

The Court hereby ORDERS, ADJUDGES, AND DECREES that the Motion to Lift Stay is GRANTED.

Despite these references to specific dates, motions, and actions of the court, the record does not contain a November 25, 2014 order, or a September 30, 2015 motion to lift a stay, nor does it contain an order from the circuit court which stays discovery in this chancery court case. Moreover, the record contains an order entered in this case on September 21, 2015, following a hearing on August 27, stating in pertinent part:

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that *Plaintiff's Motion for Sanctions for Failure to Obey Lawful Orders of the Court, for Discovery to be Provided* shall be granted. The Court is alarmed at the disobeyance of the Court Order by Defendants and finds that there is no excuse for disregard of the Court Orders. The Defendant's shall provide answers to each Interrogatory and responses to each Request for Production of Documents requested by Plaintiff no later than 12:00 p.m. (noon) on Thursday, September 3, 2015.

* * *

IT IS FURTHER ORDERED ADJUDGED AND DECREED that *Plaintiff's Motion to Quash the Notice of Deposition of Mr. Nesmith Set for August 25, 2015* is moot. Mr. Nesmith was timely deposed on August 25, 2015.

* * *

IT IS FURTHER ORDERED ADJUDGED AND DECREED the deposition of Sam and Shannon Clemmons shall be re-set from September 1, 2015 to September 9, 2015 to allow sufficient time for discovery to be provide[d] to Plaintiff.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that any supplementation to discovery shall be completed and submitted to the other party no later than September 22, 2015, one week prior to the trial date of September 29, 2015.

Thus, it appears that the parties were engaged in some discovery after the case was continued from its September 2015 trial date; it is not clear that discovery was actually stayed in this case prior to April 2016, in the manner contended by Defendants. In any event, this action had been pending since August 27, 2014; the order entered September 21, 2015, memorializes that trial had been set for September 29. An order entered on September 30 states, *inter alia*, "trial in this matter has now been re-set from September 29, 2015 to April 25, 26 and 27 and *thus discovery will be supplemented*." (Emphasis added.)

10

Defendants assert that they filed the Emergency Motion, seeking to continue the April 25, 2016 trial in order to conduct written discovery and to depose three non-party witnesses; the record shows that the court granted their request for written discovery. Defendants have failed to explain why they did not either take the discovery they sought or seek to lift the stay earlier.[5] They argue that they were "required to rush through discovery of key witnesses and were not allowed to complete any meaningful discovery," which "undermined" a "fundamental" theory of their case. However, counsel for Defendants represented to the court on the first day of trial that the depositions of the three witnesses had been taken. Moreover, two of the witnesses were called by Defendants to testify at the trial on May 20, and Defendants elected to not call the third. Giving consideration to the factors set forth in *Howell*, on the record presented, the court did not abuse its discretion in denying the motion to continue the trial. We find no basis upon which to assign error to the court in its management of discovery matters.

Defendants next assert that the trial court erred when it entered an order imposing discovery sanctions on May 28, 2016, in which it "found that trial counsel for Appellants failed to comply with the requirements of Tenn. R. Civ. P. 5.02(2)(a), gave them no opportunity to remedy the technical lack of a certificate, and ordered that Appellants could conduct no further discovery of Mss. Jones, Jones, and Pendergrass." The order to which they refer is not in the record and Defendants did not include this order in the list of documents they sought to include in the appellate record. Our review is limited to the appellate record and, in the absence of the order, we are unable to consider this argument. *See Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66, 86 (Tenn. Ct. App. 2011) (citing Tenn. R. App. P. 24(b)).

## C. THE HOLDINGS RELATIVE TO THE MEMBERSHIP TRANSFER AGREEMENT

Defendants do not deny that they did not pay Plaintiff the $10,000 per month after October 2013; they assert that they were not obligated to do so because he breached the "Do No Harm" provision of the Membership Transfer Agreement by withholding documents belonging to Elite, by conspiring with Wanda Jones to open a post office box and directing payments to that box without authorization, by improperly selling a company vehicle, and by improperly cashing out a life insurance policy. They contend that the court erred with respect to three holdings relative to the 'Do No Harm' clause of the Membership Transfer Agreement: that it was ambiguous; that parol evidence should be considered to interpret the clause and, related thereto, in prohibiting them from introducing parol evidence at trial; and that Attorney Dan Huffstutter was representing Defendants (instead of all members of Elite) when he drafted the Membership Transfer Agreement, and in construing the agreement against them when it was considering the question of ambiguity.

---

[5] Defendants do not explain why it was necessary for them to depose non-party witnesses.

11

The "Do No Harm" clause reads:

3. Parties Agreement. The Purchasers, Sellers and Elite (individually "Party" and collectively "Parties"), agree that upon consummation of the transaction contemplated by this Agreement . . .

B. Not to engage in any written or verbal action with the intent of trying to disparagingly portray a Party or bring harm to a Party.

"The interpretation of a contract is a matter of law that requires a *de novo* review on appeal." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335–336 (Tenn. 1983)). Our analysis of this issue is guided by the Tennessee Supreme Court's decision in *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*,

A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous. Once found to be ambiguous, a court applies established rules of construction to determine the parties' intent. "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury. *Smith v. Seaboard Coast Line R.R. Co.,* 639 F.2d 1235, 1239 (5th Cir. 1981).

… If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.

Nonetheless, a contractual provision may be susceptible to more than one reasonable interpretation, which renders the terms of the contract ambiguous. *Memphis Housing Auth. v. Thompson,* 38 S.W.3d 504, 512 (Tenn.2001), *cert. denied,* 534 U.S. 823, 122 S.Ct. 59, 151 L.Ed.2d 27 (2001). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Turner,* 503 S.W.2d at 190–91. Where the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the courts must resort to other rules of construction.

78 S.W.3d 885, 890 (Tenn. 2002). In the case of *Pierce v. Pierce*, this Court noted:

Words must be construed in accordance with their usual and ordinary meaning. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.,* 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986). "An ambiguity does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gynecology & Obstetrics, P.C. v.*

12

*Southeastern Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "Neither the parties nor the courts can create an ambiguity where none exists in a contract." *Id.*

*Pierce v. Pierce*, No. E2007-01403-COA-R3-CV, 2008 WL 2557363, at *4 (Tenn. Ct. App. June 26, 2008).

In *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, our Supreme Court has held that while the words of a contract remain our "lodestar" in interpretation, 566 S.W.3d 671, 694 (Tenn. 2019), courts are not prevented from considering parol evidence, so long as it is not used to modify or vary the terms of the contract:

> Tennessee cases have also eschewed an extreme textual approach. Instead, they reflect balance; they demonstrate a definite focus on the written words in the parties' contract, but they also consider evidence related to the situation of the parties and the circumstances of the transaction in interpreting those words. . . .
>
> In *Hamblen County v. City of Morristown*, this Court considered extrinsic evidence in the form of the parties' post-contract behavior, i.e., the rule of practical construction. 656 S.W.2d 331, 333-35 (Tenn. 1983). The Court used language that approved consideration of extrinsic evidence of context, even for interpretation of a contract that seemed facially unambiguous, with the important qualification that such evidence cannot be used to modify, expand, or restrict the contract:
>
>> The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement.

*Hamblen Cnty.*, 656 S.W.2d at 334 (quoting Restatement of Contracts § 235(d) and comment); *see also Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000) (quoting Bryan A. Garner, *The Elements of Legal Style* 7 (1991)) (noting that "everything [in contract interpretation] hangs on context and purpose").

566 S.W.3d at 692, 693 (footnotes omitted).

Having reviewed the entire Agreement, we do not find other language in the document that is helpful or provides additional context in interpreting the disputed language. The word "harm" is broad, but just because the parties interpret a term differently does not render it ambiguous. *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005). In reading the clause as a whole and construing the word according to its usual and ordinary meaning, we do not find the disputed language to be ambiguous. *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 191 (Tenn. 1973) (observing that a court will not place "strained construction . . . on the language used to find ambiguity where none exists."). Though the parties interpret the word "harm" differently, taken in the context of the entire agreement, the word is broad enough to encompass the harm allegedly caused by Plaintiff and asserted by Defendants as a defense to the breach of contract claims.

Our conclusion that the contract is not ambiguous obviates the need for extensive consideration of the remaining issues raised by Defendants on appeal.[6,7]

Given our *de novo* review of the contractual language and the fact that this case went to trial, we next consider whether the proof at trial established that Plaintiff engaged in written or verbal actions that brought harm to Defendants, such that they were not required to make payments pursuant to the MTA and Promissory Note.

The judgment was rendered after a non-jury trial and "is subject to our *de novo* review upon the record of the proceedings below. Tenn. R. App. P. 13(d) mandates that there is a presumption that the trial court's findings of fact are correct, and we must honor that presumption unless the evidence preponderates to the contrary." *Cannon v. Loudon Cty.*, 199 S.W.3d 239, 241 (Tenn. Ct. App. 2005) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). For the evidence to preponderate against

---

[6] Defendants contend that the court erred in considering parol evidence. The parol evidence rule does not prohibit consideration of evidence that does not contradict the written contract. *Individual Healthcare Specialists, Inc.,* 566 S.W.3d at 693, 696. The trial court concluded that the term was ambiguous and considered the testimony of Mr. Clemmons to aid it in its interpretation of the meaning of "harm"; under our analysis, this testimony is irrelevant and, in any event, does not contradict the meaning of the term. The definition settled upon by the trial court is in fact encompassed within the broad term "harm"; accordingly, the court's assigned definition did not modify or vary the terms of the contract. Thus, there was no reversible error in its consideration of parol evidence. *See* Tenn. R. App. P. 36(b).

[7] With respect to Defendants' contention that the court erred in concluding that attorney Dan Huffstetter represented them, such that the contract provision should be construed against them, our holding that the provision at issue is not ambiguous eliminated the need to apply the rule that "[a]n ambiguous provision in a contract generally will be construed against the party drafting it." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).

the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 70–71 (Tenn. Ct. App. 2000). We afford no presumption to the correctness of the court's conclusions of law. *Cannon,* 199 S.W.3d at 241 (citing *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996)).

Defendants do not contend that the court's extensive factual findings of fact are unsupported by the evidence. We have examined the proof in light of Defendants' affirmative defenses that Plaintiff first harmed them by withholding documents belonging to Elite, by conspiring with Wanda Jones to open a post office box and directing payments to that box without authorization, by selling a company vehicle, and by cashing out a life insurance policy. We have paid careful attention to the portions of testimony cited by the parties in their briefs. Upon our review, the preponderance of the evidence supports the conclusion that Plaintiff did not breach the "Do No Harm" provision of the MTA such that Defendants would be excused from performing their obligations under the MTA; neither does the record establish by a preponderance any of the affirmative defenses or counterclaim alleged by Defendants in their amended complaint.

### D. ATTORNEY'S FEES ON APPEAL

Plaintiff asserts that he is entitled to his attorney's fees on appeal. "The decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court." *Andrews v. Andrews,* 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010). Tennessee adheres to the "American Rule" for award of attorney fees, under which "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303, 308 (Tenn. 2009) (citing *John Kohl & Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn. 1985); *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)).

The Promissory Note executed by the parties reads, in pertinent part, that "It is expressly understood and agreed to by Makers that if it is necessary to enforce payment of this note through an attorney or by suit, the Makers shall pay reasonable attorney's fees and all costs of collection." Pursuant to the language of the promissory note and in light of the outcome of this appeal, we hold that Plaintiff is entitled to recover his attorney's fees incurred in defending this appeal and remand to the trial court for a determination of the amount.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

RICHARD H. DINKINS, JUDGE