IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2021 Session

## RACHEL RANSOM STRICKLAND v. PATRICK DUSTIN STRICKLAND

Appeal from the Chancery Court for Williamson County
No. 94CH1-2016-CV-45100      Joseph A. Woodruff, Chancellor

_____

## No. M2020-01070-COA-R3-CV

_____

In this post-divorce action, a former husband filed a motion to modify his alimony obligation after his former wife began living with a romantic partner. The wife contended that she and her romantic partner equally divided their living expenses and that she still needed the previously awarded alimony despite her new living arrangement. The trial court disagreed and suspended the husband's alimony obligation retroactively to the filing of his petition to modify. In addition to the alimony issue, the trial court determined that wife successfully proved two civil contempt claims against the husband, awarded her the reasonable attorney fees she incurred to prosecute those claims, and dismissed a civil contempt claim she raised regarding his late payment of the value of the wife's interest in two certificates of deposit ("CD") awarded to her in the parties' marital dissolution agreement. The wife appealed, challenging the suspension of the husband's alimony obligation, the dismissal of her civil contempt claim, and the award of attorney fees. Finding that the trial court abused its discretion in suspending the husband's alimony obligation, we reverse that part of the court's decision and remand for a determination of her reasonable attorney fees relating to that issue. We affirm the part of the trial court's judgment dismissing the civil contempt claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Adrian H. Altshuler and Caroline Beth Altshuler, Franklin, Tennessee, for the appellant, Rachel Ransom Strickland Living.

Philip Edward Schell, Franklin, Tennessee, for the appellee, Patrick Dustin Strickland.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Rachel Ransom Strickland Living[1] ("Wife") and Patrick Dustin Strickland ("Husband") were divorced by order of the court on December 20, 2018, based on the ground of irreconcilable differences. In the final divorce decree, the court incorporated the parties' marital dissolution agreement ("MDA") which contains the following pertinent provisions:

> (6) REAL PROPERTY: The parties own no real property. The proceeds from the parties' marital residence are contained in a [sic] two CDs, pledged as collateral against the small business loan for Strickland and Shue, LLC. Each party is awarded a one-half interest in each CD equal to the present value of each CD. Husband shall pay wife the value of her interest in the CDs concurrently with his payment of the value for the transfer of her shares of Strickland and Shue LLC, as stated in paragraph 7, at which time Wife's interest shall be surrendered to Husband. Upon payment to Wife, Wife's name shall be removed from said accounts.
>
> (7) STRICKLAND AND SHUE, LLC: Wife's 25% interest in Stickland and Shue, LLC shall be purchased by Strickland and Shue, LLC at a share price of $12,600.00, for a total price of $315,000.00. Husband and Wife shall seek and cooperate to adopt a corporate resolution to ratify the terms of this agreement. Wife's payment shall not be made to her until after January 1, 2019. The parties acknowledge that Wife will owe some amount of federal and/or state tax as a result of this transaction, and the parties agree that Husband shall reimburse Wife one-half of her tax liability, which would be due and owing in the year 2020. . . .
>
> . . . .
>
> (15) ALIMONY: Husband shall pay to Wife as transitional alimony the sum of $2,000.00 per month. Said payments shall commence the first day of the month following the payment to Wife for her interest in Strickland and Shue LLC, and shall continue on the first day of each month, thereafter, for a period of forty-eighty (48) months. Said alimony is non-modifiable except it terminates upon Wife's death or remarriage, or may be modified pursuant to the statute upon Wife's cohabitation with a romantic partner. . . .

At the time of the divorce, Wife and the parties' minor child lived in an apartment located on Boxwood Drive in Franklin, Tennessee. Wife entered into a lease for this apartment in 2017 when the parties separated, and she was the only tenant initially listed on the lease. As such, she was solely responsible for the rent, utilities, and all costs of

---

[1] According to the record and Wife's appellate brief, her surname now is "Living."

living for herself and the child, aside from the monthly child support payments she received from Husband. Wife was unemployed at that time and paid these living expenses with the $6,740 per month in distributions she received from Strickland and Shue, LLC due to her 25% interest in the business. She continued receiving these monthly distributions from the time of the divorce in December 2018 through June 2019, but she ceased receiving them after Husband paid her the value of her 25% interest on June 18, 2019. Shortly thereafter, on July 1, 2019, Wife began receiving transitional alimony payments in the amount of $2,000 per month.

Approximately two weeks after Wife received her first alimony payment, her romantic partner, Dr. Jeremy Pinyard, began living with her and the child at the apartment on Boxwood Drive. Wife added Dr. Pinyard's name to the lease as a co-tenant equally responsible for paying the rent. The apartment's utilities remained solely in Wife's name, but Dr. Pinyard equally contributed to paying them each month.

Husband soon learned of Wife's cohabitation and, on July 12, 2019, he commenced the instant action by filing a petition to modify alimony pursuant to the cohabitation provision located in Tenn. Code Ann. § 36-5-121(g)(2)(C). Wife filed an answer asserting that she continued to need transitional alimony and that Tenn. Code Ann. § 36-5-121(g)(2)(C) did not apply because the MDA expressly provides that the alimony award is non-modifiable. She also filed a petition for civil contempt alleging four counts of contempt against Husband. As relevant to this appeal, Wife alleged that she was entitled to civil contempt damages because Husband violated paragraph six of the MDA when he paid her for the value of her interest in the two CDs six months after paying her for the 25% interest in Strickland and Shue, LLC rather than paying both concurrently.

After hearing the matter, the trial court entered a memorandum and order suspending Wife's transitional alimony retroactively to the date Husband filed the petition to modify. The court based its decision on the following findings: (1) the MDA did allow the alimony award to be modified pursuant to Tenn. Code Ann. § 36-5-121(g)(2) upon Wife's cohabitation with a romantic partner and (2) Wife failed to rebut the presumption that she was not receiving support from or supporting Dr. Pinyard and that she continued to need the alimony despite the cohabitation. The trial court then concluded that Wife's claim for civil contempt damages related to Husband's late payment of the value of her interest in the CDs should be dismissed because she failed to prove she suffered damages as a result of the late payment. Finally, because Wife prevailed on two of her civil contempt claims, the trial court awarded her attorney fees in the amount of $3,100.

Wife timely appealed and presents the following issues for our review: (1) whether the trial court erred in concluding that the parties agreed in the MDA that the alimony award would be modifiable, (2) whether the trial court erred in concluding that Wife failed to rebut the presumption in Tenn. Code Ann. § 36-5-121(g)(2)(C) that she received support from or provided support to Dr. Pinyard and that she no longer needed the amount of

alimony previously awarded, (3) whether the trial court erred in dismissing the contempt charge against Husband for his failure to pay her the value of her interest in the CDs as provided in the MDA, and (4) whether the trial court erred in not awarding her a greater portion of her attorney fees incurred at trial. Both parties seek an award of their attorney fees incurred on appeal.

STANDARD OF REVIEW

In non-jury cases, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015). We review a trial court's conclusions on issues of law de novo without a presumption of correctness. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015).

Most of the issues Wife raises concern the trial court's decision to suspend the transitional alimony awarded to her in the MDA. Because modification decisions are "'factually driven and call[] for a careful balancing of numerous factors,'" trial courts are given "'wide latitude'" when deciding to increase or decrease spousal support. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)); *see also Winne v. Winne*, No. E2018-01050-COA-R3-CV, 2019 WL 5606928, at *2 (Tenn. Ct. App. Oct. 30, 2019). When reviewing a trial court's modification decision, we are disinclined to second-guess the trial court or to substitute the trial court's judgment with our own. *Winne*, 2019 WL 5606928, at *2 (citing *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). Indeed, "[w]e presume that the trial court's decision is correct and review the evidence in the light most favorable to the decision." *Id.* (citing *Gonsewski*, 350 S.W.3d at 105-06). We will not reverse the trial court's modification decision absent an abuse of discretion. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010). An abuse of discretion occurs when a court "applie[s] incorrect legal standards, reache[s] an illogical conclusion, base[s] its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

ANALYSIS

I. Alimony.

Tennessee recognizes four types of alimony: "(1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony." *Scherzer v. Scherzer*, No. M2017-00635-COA-R3-CV, 2018 WL 2371749, at *6 (Tenn. Ct. App. May 24, 2018) (citing Tenn. Code Ann. § 36-5-121(d), and *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012)). At issue in this case is transitional alimony, which "is appropriate when a court

- 4 -

finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *Gonsewski*, 350 S.W.3d at 109.

A. Modification.

Wife first contends that the trial court erred in determining that the transitional alimony award was subject to modification pursuant to Tenn. Code Ann. § 36-5-121(g)(2)(C) because the alimony provision in the MDA expressly prohibited the court from modifying alimony. Marital dissolution agreements are contracts that are "valid and enforceable between the parties." *Winne*, 2019 WL 5606928, at *2 (citing *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)). Although "transitional alimony is generally subject to modification post-divorce if one of the contingencies in Tennessee Code Annotated § 36-5-121(g)(2) is established," the parties may "expressly agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable." *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014). Thus, "where the parties agree in a marital dissolution agreement to terms different from those set out in the [alimony] statutes," the statutes do not apply. *Vick*, 2014 WL 6333965, at *4 (citing *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 563 n.5 (Tenn. Ct. App. 2003); *Myrick v. Myrick,* No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at *4-6 (Tenn. Ct. App. June 19, 2014) (footnote omitted)).

This issue requires us to interpret the MDA which, as a contract, is subject to the following general rules of contract interpretation:

> "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand* [*v. Pavletic*], 292 S.W.3d [618,] 630 (Tenn. 2009)] (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citing *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011)). The literal meaning of the contract language controls if the language is clear and unambiguous. *Allmand*, 292 S.W.3d at 630. However, if the terms are ambiguous in that they are "susceptible to more than one reasonable interpretation," *Watson*, 195 S.W.3d at 611, we must apply other established rules of construction to aid in determining the contracting parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction. *Id.* (quoting *Smith v. Seaboard Coast Line R.R.*, 639 F.2d 1235, 1239 (5th Cir. Unit B Mar. 1981 (per curiam))).

*Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). We review a trial court's interpretation of a contract de novo without a presumption of correctness. *Barnes*, 193 S.W.3d at 498.

According to Wife, the MDA evidenced an intent to preclude modification of the award pursuant to the alimony statute simply because the alimony provision includes the word "non-modifiable." This argument, however, entirely ignores the remaining language in the alimony provision. Specifically, the provision provides that Husband's $2,000 per month transitional alimony obligation "is non-modifiable except it terminates upon Wife's death or remarriage, *or may be modified pursuant to the statute upon Wife's cohabitation with a romantic partner*." (Emphasis added). The clear and unambiguous language in the alimony provision, therefore, provides that the award is generally "non-modifiable," *but* it may be subject to modification in a particular circumstance—Wife cohabitating "with a romantic partner." Moreover, the alimony provision clearly and unambiguously allows for the award to be modified pursuant to the alimony statute, Tenn. Code Ann. § 36-5-121, if Wife began cohabitating "with a romantic partner."

Wife admitted that Dr. Pinyard was her romantic partner and that she was cohabitating with him. We thus conclude that the trial court did not err in determining that the MDA permitted modification under these circumstances.

B. Rebuttable presumption.

When an alimony recipient cohabitates with a third person, a rebuttable presumption is raised that the alimony recipient is no longer in need of the previously awarded amount of alimony because the recipient is either supporting or receiving support from the third person. Tenn. Code Ann. § 36-5-121(g)(2)(C); *Winne*, 2019 WL 5606928, at *4 (citing *Wright v. Quillen*, 83 S.W.3d 768, 775 (Tenn. Ct. App. 2002)). This presumption is located in Tenn. Code Ann. § 36-5-121(g)(2)(C), which provides that transitional alimony shall not be modified unless:

> The alimony recipient lives with a third person, in which case a rebuttable presumption is raised that:
> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Once the presumption has been raised, the burden of proof shifts to the alimony recipient to demonstrate a continuing need for the full amount of the alimony award despite the cohabitation. *Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506, at *7 (Tenn. Ct. App. Feb. 26, 2014). To determine whether an alimony recipient has successfully rebutted the presumption, a court must consider not only whether the alimony recipient had contributed to or received support from the third person but also whether the recipient demonstrated his or her continuing need for transitional alimony. *Scherzer*, 2018 WL 2371749, at *10 (citing *Hickman*, 2014 WL 786506, at *7).

1. Financial effect of Wife's cohabitation.

Because it was undisputed that Wife was cohabitating with Dr. Pinyard, the trial court properly found that the presumption had been raised. Wife contends that the trial court erred in concluding that she failed to rebut the presumption because she demonstrated that she was neither supporting nor receiving support from Dr. Pinyard due to them equally contributing to all of the household bills. This Court considered the same argument in *Scherzer v. Scherzer*. In that case, the wife and her fiancé testified to having an arrangement whereby they equally divided the household expenses for the residence they jointly owned. *Scherzer*, 2018 WL 2371749, at *10-11. Despite this testimony, the trial court concluded that the wife failed to rebut the presumption because she failed to offer "any type of ledger, spreadsheet, or record of any kind that could show evidence of adherence to their alleged arrangement to split the household expenses 'fifty/fifty.'" *Id.* at *11. We affirmed the trial court concluding that the record contained little to no evidence corroborating the wife's and her fiancé's testimony regarding their arrangement and that their "respective descriptions of how they settled their finances were often so vague as to make it impossible to discern whether they actually knew how the expenses had been divided each month." *Id.* at *13-14.

We again considered this argument in *Winne v. Winne*.[2] As in *Scherzer*, the wife in *Winne* testified that she and her boyfriend jointly owned a home and that they had an arrangement to divide the bills in a manner that was "about even." *Winne*, 2019 WL 5606928, at *2, *5. The wife maintained that her expenses had not changed despite living with her boyfriend, but the trial court questioned her credibility and found that she failed to rebut the presumption. *Id.* at *5. We affirmed after finding no evidence in the record to contradict the trial court's credibility assessment, and we noted that the wife offered no evidence to "quantify her half of the financial arrangement." *Id.*

---

[2] We note that *Winne v. Winne* involved a modification of an alimony in futuro award. This Court has previously explained, however, that appellate decisions applying the law regarding the statutory cohabitation provision for alimony in futuro, Tenn. Code Ann. § 36-5-121(f)(2)(B), are applicable when analyzing the cohabitation statute for transitional alimony because the statutes contain identical language. *See Scherzer*, 2018 WL 2371749, at *7.

Here, Wife testified that she and Dr. Pinyard leased the same apartment she had been leasing at the time of the divorce and that his name had been added to the lease as a co-tenant. Although the utilities remained solely in Wife's name, she stated that she and Dr. Pinyard share the costs for the utilities "50/50." Wife provided an income and expense statement that itemized the household expenses that she and Dr. Pinyard equally divide, and she explained that these expenses are paid from a joint checking account that is equally funded by her and Dr. Pinyard. Wife further explained that she also maintained a separate bank account solely in her name into which alimony and child support payments were deposited. She paid for her separate expenses and those of her daughter from this separate account. Dr. Pinyard did not contribute any funds towards Wife's separate expenses or to those of her daughter, and Wife did not contribute any funds to Dr. Pinyard's separate expenses.

To quantify her half of the financial arrangement with Dr. Pinyard, Wife presented a spreadsheet that listed every deposit and corresponding check number she and Dr. Pinyard contributed to the joint account. She then presented nine copies of checks written from that account to pay the monthly rent on the Boxwood Drive apartment. Additionally, Wife introduced a spreadsheet she had compiled listing the amount of every withdrawal from the joint account for every shared household expense/utility during the ten months prior to trial. This evidence supports the trial court's finding that Wife and Dr. Pinyard "deposit equal amounts" into the joint account "which they jointly use to fund their joint living expenses," and that "[t]hey share equally in paying the utilities for their apartment, groceries, and other quotidian needs of daily living." Thus, unlike the alimony recipients in *Scherzer* and *Winne*, Wife rebutted the first part of the presumption—that she was neither supporting nor receiving support from Dr. Pinyard. This conclusion does not end the inquiry, however, because Wife also had the burden of demonstrating that she continued to need the full amount of the alimony previously awarded. *See* Tenn. Code Ann. § 36-5-121(g)(2)(C); *see also Scherzer*, 2018 WL 2371749, at *10 (stating that the key factual analysis "must involve not only whether Wife had contributed to [third person's] support but also whether Wife demonstrated her continuing need for transitional alimony at the time of the modification hearing").

2. Need for transitional alimony.

When determining whether the alimony recipient has rebutted the presumption by demonstrating a continuing need for the full amount of the previously awarded alimony, "a court must examine the financial circumstances of the alimony recipient at the time of the modification hearing." *Hickman*, 2014 WL 786506, at *7. We have previously held that alimony recipients "rebutted the presumption by showing a deficit of funds despite the third-party's support or cohabitation." *Howard v. Beasley*, No. W2019-01972-COA-R3-CV, 2020 WL 6149577, at *3 (Tenn. Ct. App. Oct. 20, 2020) (citing *Gordon v. Gordon*, No. M2017-01275-COA-R3-CV, 2018 WL 5014239, at *10 (Tenn. Ct. App. Oct. 16,

2018); *Hickman*, 2014 WL 786506, at *8; *Audiffred v. Wertz*, No. M2009-00415-COA-R3-CV, 2009 WL 4573417, at *1, *3-4 (Tenn. Ct. App. Dec. 4, 2009)).

Here, at the time of the modification hearing, Wife remained unemployed. Her only sources of income were $2,000 per month in alimony and $1,831 per month in child support, for a total monthly income of $3,831. Wife still lived in the same apartment she had lived in at the time of the divorce, but she shared the cost of rent, utilities, and other household expenses equally with Dr. Pinyard. We agree with the trial court's finding that "[t]his arrangement allow[ed] each of them to obtain housing accommodations at half the cost they would otherwise incur," but Wife's income and expense statement shows that, despite this arrangement, she still paid $1,513.50[3] each month toward these expenses. Her income and expense statement further shows that Wife has approximately $3,941.75[4] in monthly general living expenses she shares with the parties' daughter. Thus, despite "obtain[ing] housing accommodations at half the cost," Wife still had monthly expenses totaling $5,455.25. Even receiving the full amount of alimony, Wife has a monthly deficit of $1,524.25. The trial court acknowledged this deficit finding that, "in order to make up the difference between her income and expenses, Wife has been consuming cash distributed to her in the division of marital property."

Notwithstanding this finding, the court concluded that Wife failed to rebut the presumption that she no longer needed the previously awarded amount of alimony. The trial court made its decision by heavily relying on its finding that, "[a]lthough she is trained and qualified to earn income as a massage therapist, Wife chooses to be unemployed." The record does not support this finding, however. Wife testified that, prior to the marriage, she had trained as a massage therapist and had held licensure for massage therapy in Texas.

---

[3] Wife's income and expense statement also includes an additional equally divided monthly expense for "groceries and eating out for [Wife] and Dr. Pinyard together" in the amount of $1,299. Wife's half of that cost was $649.50. Because this amount was an increase in her monthly expenses that was solely due to her relationship with Dr. Pinyard rather than due to adjusting to the economic consequences of the divorce, we have excluded that amount from the calculation of her half of the shared expenses. Including such an expense would defeat the purpose of transitional alimony. *See* Tenn. Code Ann. § 36-5-121(d)(4) ("Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded . . . ."). We note that Wife certainly is entitled to claim her expenses for groceries to feed herself, which she did in a separate section of the document pertaining to her cost of groceries shared with the parties' daughter. That expense has, therefore, been included in the calculation of expenses Wife shares with her daughter.

[4] Wife's income and expense statement lists costs for her college tuition to obtain a degree in counseling, legal fees, and a new car, for a combined total of $3,680 in additional expenses. These expenses have been excluded from the calculation of her general expenses shared with the parties' daughter because they are not related to the purpose of transitional alimony. *See* Tenn. Code Ann. § 36-5-121(d)(4). Specifically, the legal fees and new car were expenses she incurred after the divorce. The tuition expense, as the trial court found, is more commonly considered rehabilitative alimony—a form of alimony the parties did not agree to in the MDA.

- 9 -

She has never held a message therapy license in Tennessee, and she stated that she has not been formally employed in that field or any other since 2006. As Wife points out in her appellate brief, "[i]t is not logical to believe Wife [is] presently able to obtain employment in a field she has not practiced for nearly fifteen years, in a state where she is not licensed, during a pandemic with soaring unemployment in service-based industries with restrictions on in-person activities."

Lastly, the trial court found that Wife no longer needed alimony because she was no longer transitioning to the status of a single person due to her "living in a domestic partnership" with Dr. Pinyard. The trial court in *Scherzer* made a similar analogy, which we recognized was relevant only to the extent that it explained an alimony recipient's unequal payment of living expenses with a third party:

> We note that Wife is correct in arguing that the type of relationship a party has with a cohabiting third person is irrelevant to whether the cohabitation statute applies. *See Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814, at *4 (Tenn. Ct. App. Oct. 15, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005) ("[T]he nature of the relationship is irrelevant to the statute."). However, we determine that the trial court's conclusions in this regard were relevant in terms of the undisputed commingling of Wife's and Mr. McKinnis's finances and Wife's disproportionate "shouldering" of the household expenses, as found by the trial court.

*Scherzer*, 2018 WL 2371749, at *17 (footnote omitted); *see also Gordon*, 2018 WL 5014239, at *10 (concluding that the wife had rebutted the statutory presumption despite her remarriage and cohabitation with her new spouse because she continued to need the transitional alimony).

As discussed in detail earlier in this opinion, the record shows that Wife and Dr. Pinyard were very intentional in how they paid their shared expenses in order to avoid commingling their finances. Therefore, the nature of Wife's relationship with Dr. Pinyard had no bearing on whether she continued to need the alimony previously awarded.

Based on the foregoing, we conclude that, under these circumstances, Wife has rebutted the statutory presumption and demonstrated her continuing need for the previously awarded amount of alimony and that the trial court abused its discretion in suspending the alimony award. The trial court's judgment suspending her transitional alimony award is reversed.[5]

---

[5] In her appellate brief, Wife also challenges the trial court's decision to make the suspension of alimony retroactive to the filing of Husband's petition to modify. In light of our decision to reverse the trial court's suspension of alimony, this issue is pretermitted.

II. <u>Contempt damages</u>.

Wife next contends that the trial court abused its discretion in dismissing her civil contempt action regarding Husband's willful disobedience of the MDA's requirement in paragraph six that he pay Wife the value of her interest in two CDs concurrently with the payment he made to her on June 18, 2019, for her interest in Strickland and Shue, LLC. *See* Tenn. Code Ann. § 29-9-102(3) (limiting the inherent power of the courts to punish conduct by contempt to specific types of conduct, including "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts"). Provisions in a marital dissolution agreement, such as the one at issue here, that have merged into a divorce decree may be enforced by contempt. *See Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *5-6 (citing *Long v. McAllister-Long*, 221 S.W.3d 1, 9-10 (Tenn. Ct. App. 2006)). Civil contempt actions are "remedial in character" and "appl[y] when a person refuses or fails to comply with a court order." *Baker v. State*, 417 S.W.3d 428, 436 (Tenn. 2013). They are generally "brought to force compliance with the order and thereby secure private rights established by the order." *Id.*

If a contemnor has refused to perform an act mandated by a court's order and the contemnor has the ability to comply with the order at the time of the contempt hearing, the court may imprison the contemnor to coerce him or her into complying with the court's order. *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005). Alternatively, the court may order the contemnor to pay damages "to compensate the party for injury arising from the illegal disobedience of the court." *Id.* "[E]ven when the conduct at issue has ceased, the disobedience of the court's order is not 'rectified' until the offending party pays damages to make the other party whole." *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *7 (Tenn. Ct. App. July 24, 2015) (citing *Overnite Transp. Co.*, 172 S.W.3d at 511). "The measure of damages is the actual injury sustained as a result of the contempt." *Overnite Transp. Co*, 172 S.W.3d at 511.

A civil contempt claim based on an alleged willful disobedience of a court order has four essential elements:

> (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."

*Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013). In civil contempt proceedings, willful conduct

- 11 -

"consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing."

*Konvalinka*, 249 S.W.3d at 357 (quoting *State ex rel. Flowers v. Tenn. Trucking. Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). Whether an order has been violated and whether the violation was willful present factual issues that we review de novo, affording a presumption of correctness to the trial court's findings. *Id.* We review a trial court's contempt decision under the abuse of discretion standard. *Id.* at 358; *see also Gibbs*, 2016 WL 4697433, at *3.

Here, paragraph 6 of the MDA required Husband to pay Wife the value of her interest in two CDs at the same time he paid her for her 25% interest in Strickland and Shue, LLC. There was no dispute that this provision was lawful or that it was clear and unambiguous. Furthermore, there was no dispute that Husband failed to pay Wife the value of her interest in the CDs on June 18, 2019, when he paid her for the value of her shares in the company. Instead, Husband paid her the value of her share of the CDs, plus all accrued interest at the CD contracted rate of 2.8% on December 10, 2019. Husband testified it was impossible for him to pay Wife the value of her share in the CDs prior to December 2019, explaining as follows:

> Q. And why was it not paid pursuant to your agreement concurrently with the payment of Strickland & Shue?
> A. Plainly, because I couldn't. I add a little bit more context, that CD was – originally came from the bank having a second loan on our marital residence. When we sold our residence, the bank still wanted that collateral, hold it into a CD, and so I didn't have a way to get that money concurrent with the payment of shares.

The trial court found Husband's explanation "unavailing." Nevertheless, the court dismissed this claim for civil contempt because Wife failed to show that she "actually suffered damages from Husband's delay in paying her."

Wife contends that this was an abuse of discretion because "being forced to forego use of her money for six months [was] harm in and of itself." Thus, Wife asserts, she was entitled to an award of interest. She is correct that "'[l]oss of use of funds due is the necessary result of the failure to pay an obligation according to its terms'" and that the "'usual means of compensating for this necessary result'" is the allowance of interest. *Post v. Post*, No. M2008-01488-COA-R3-CV, 2009 WL 1850880, at *7 (Tenn. Ct. App. June 26, 2009) (quoting *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994)). The record

- 12 -

shows, however, that the amount Husband paid Wife on December 10, 2019, included the value of her share of the face amount of the CDs plus all accrued interest at the CD contracted rate of 2.8%. Therefore, Husband compensated Wife for the six-month loss of use of these funds. She failed to demonstrate that the interest Husband paid her was less than what she would have earned from investing the funds in some alternative form of investment. She simply states that she was entitled to interest in the amount of 10% as "prejudgment interest." We ask the same question the trial court asked: "interest on what?" She was fully compensated for her injury. Awarding her an additional 10% as prejudgment interest would penalize Husband, which is not the purpose of prejudgment interest. *See Alexander v. Inman*, 974 S.W.2d 689, 698 (Tenn. 1998) (stating that "the purpose of prejudgment interest is to fully compensate a plaintiff for the loss of the use of funds, not to penalize a defendant"). We, therefore, conclude that the trial court did not abuse its discretion in dismissing Wife's civil contempt claim relating to Husband's late payment of her value in the CDs.[6]

III. Attorney fees.

A. At trial.

Wife argues that the trial court abused its discretion in awarding her only $3,100 for the attorney fees she incurred at trial in relation to the two civil contempt claims upon which she prevailed. Specifically, Wife argues that the amount of attorney fees awarded were not reasonable because they did not include the attorney fees she incurred to prosecute the civil contempt claim relating to Husband's failure to timely pay her the value of her interest in the CDs and to defend against Husband's petition to modify alimony. Litigants are generally required to pay their own attorney fees unless a statute or contract provision provides otherwise. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). In cases involving modification of alimony or civil contempt, Tenn. Code Ann. § 36-5-103(c) provides a basis for an award of attorney fees at trial. Tennessee Code Annotated section 36-5-103(c) provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a

---

[6] Wife asserts that she was entitled to receive her reasonable attorney fees incurred in relation to this civil contempt claim as an award of damages. In the context of civil contempt, however, attorney fees as an award of damages is appropriate "to compensate the prevailing party for the expenses incurred to obtain compliance with a court order." *Cremeens*, 2015 WL 4511921, at *7 (citing *Reed v. Hamilton*, 39 S.W.3d 115, 119-20 (Tenn. Ct. App. 2000); *Keeley v. Massey*, No. 02A01-9307-CH-00159, 1994 WL 59556, at *5 (Tenn. Ct. App. Feb. 28, 1994); *XL Sports, Ltd. V. Lawler*, No. M2006-00637-COA-R3-CV, 2007 WL 2827398, at *6 (Tenn. Ct. App. Sept. 28, 2007)). Because Wife did not obtain compliance with a court order for this civil contempt claim, she was not entitled to an award of her attorney fees as damages.

permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

A decision to award attorney fees to the prevailing party under Tenn. Code Ann. § 36-5-103(c) is within the discretion of the trial court, and we will not overturn the trial court's decision absent an abuse of discretion. *Eberbach*, 535 S.W.3d at 475.

In the present case, the trial court refused to award Wife her reasonable attorney fees incurred to prosecute the civil contempt claim pertaining to Husband's failure to timely pay her the value of her interest in the CDs because she did not prevail on that claim. Tennessee Code Annotated section 36-5-103(c) expressly states that "[a] prevailing party may recover reasonable attorney's fees" in an action for civil contempt. We have affirmed the trial court's dismissal of the contempt claim due to Wife's failure to prove she had been damaged beyond that for which Husband had already compensated her. Thus, she was not the prevailing party on that claim, and we conclude that the trial court did not abuse its discretion in declining to award her the attorney fees she incurred relating to that claim pursuant to Tenn. Code Ann. § 36-5-103(c).

The trial court declined to award Wife the reasonable attorney fees she incurred defending Husband's petition to modify because the court concluded that she was not the prevailing party on that claim due to her failure to rebut the statutory presumption that her cohabitation with Dr. Pinyard meant she no longer needed alimony. In light of our holding that Wife did, in fact, successfully rebut the statutory presumption, we conclude that the trial court erred in not awarding Wife her reasonable attorney fees incurred at trial to defend against Husband's petition. The case is remanded to the trial court for a determination of Wife's reasonable attorney fees incurred at trial in relation to this issue.

B. On appeal.

Lastly, both parties request that we award them their attorney fees incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c). In addition to applying to fees at trial, Tenn. Code Ann. § 36-5-103(c) also applies to attorney fees incurred on appeal. *Paschedag v. Paschedag*, No. M2016-00864-COA-R3-CV, 2017 WL 2365014, at *5 (Tenn. Ct. App. May 31, 2017). We, like the trial court, have discretion to award attorney fees incurred on appeal. *Id.* The majority of this appeal focused on the issue of transitional alimony, as evidenced by both parties devoting two-thirds of their appellate briefs to that issue. Wife has prevailed on that issue in this appeal. Moreover, the record shows that Wife has a monthly income of approximately $3,831, while Husband has a monthly income of approximately $24,500. Exercising our discretion, we award Wife her attorney fees incurred on appeal but decline to award Husband his attorney fees incurred on appeal.

CONCLUSION

The trial court's judgment suspending Wife's transitional alimony is reversed. We affirm the trial court's judgment dismissing the civil contempt claim relating to Husband's failure to timely pay Wife the value of her interest in the CDs. The matter is remanded for a determination of Wife's reasonable attorney fees incurred at trial and on appeal in accordance with this opinion. Costs of this appeal are assessed equally against the appellant, Rachel Ransom Strickland Living, and the appellee, Patrick Dustin Strickland, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE